DORA NELLING, Administratrix, Appellant, v. THE CHICAGO, ST. PAUL & KANSAS CITY RAILWAY COMPANY.

**Duty of Engineer:** INJURY TO ONE HIMSELF NEGLIGENT. Deceased, with two other section men, was returning from work, on a hand car, all three facing the direction in which they were going. An extra freight train was coming from behind, but, owing to a high wind, the men on the hand car were not aware of it until it was quite near, though, had they looked, they could have seen it in ample time. The companions of· deceased jumped off, and were uninjured, but the latter, in stopping to remove the car from the track, was killed. Deceased, who was in charge of the men, had been specifically instructed that extra trains were liable to pass at any time. *Held*, that deceased was guilty of contributory negligence.

SUPPLEMENTAL OPINION.—MAY 26, 1896.

SAME. An engineer of a train following a hand car, propelled by section men familiar with the running of trains, has a right to suppose that they knew the train was approaching, and is bound to use all his efforts to stop the engine, only, when it appears to him that they are not aware of the approach of the train, and are not likely to leave the track in time to allow it to pass.

CONTRIBUTORY NEGLIGENCE. Where deceased, with other section men, was riding on a hand car, when a train approached from behind, and his companions jumped from the car, and avoided injury, and deceased, after having seen the train, could have jumped from the car in time to avoid injury, but remained, and was killed while attempting to take the car from the track, his own action was the approximate cause of his death.

KINNE AND DEEMER, JJ., dissenting.

*Appeal from Blackhawk District Court.*—HON. J. L.
HUSTED, Judge.

TUESDAY, MAY 28, 1895.

PLAINTIFF states as her cause of action that John
Nelling, while in the employ of defendant as a section
man, was, without fault or negligence on his part, and
because of certain acts of negligence, specified, on the
part of defendant's employes, run over by one of
defendant's trains, and killed, wherefor she asks to
recover ten thousand dollars damages.  Defendant
answered, denying generally, and alleging contribu-
tory negligence.  The case proceeded to trial before a
jury, and at the conclusion of the evidence the court,
on motion of the defendant, instructed the jury to find
for the defendant, and entered judgment accordingly.
Plaintiff appeals.—*Affirmed.*

*Burns & Sullivan* and *Ranck & Wade* for appel-
lant.

*Lusk & Bunn* and *O. C. Miller* for appellee.

GIVEN, C. J.—I.  The question presented on this
appeal is whether the court erred in sustaining defend-
ant's motion for a verdict.  The several grounds of
the motion present but two questions, namely, that of
contributory negligence on the part of deceased, and
negligence, as alleged, on the part of defendant's
employes.  The evidence shows without conflict that
about 5 P. M. of July 28, 1890, John Nelling, Victor
Gowry, and Jacob Lengenbough, three of defendant's
section men, were returning from the northeast, on
a hand car, to Waterloo, from where they had been at
work on the track.  They stood facing in the direction
they were going, watching for a regular train that

was then due to go northeast. An extra freight train was going southwest, under orders to pass the regular train at Waterloo. The men on the hand car did not hear the signals of the approach of the train, owing to the direction of a then prevailing high wind, and were not aware of it until it was quite near to them. Nelling, first seeing the train, gave warning; and thereupon Gowry and Lengenbough got off the car, and were uninjured. The car was struck by the engine, and Mr. Nelling was run over and killed. Had the men been observing, they could have seen the approach of this train in ample time to have removed the car and have avoided injury. Nelling was in charge of the gang, and had been specifically instructed that extra trains were liable to pass at any time, and cautioned to watch for such trains. The defendant claims that the evidence shows, without conflict, that Nelling was negligent in not observing the approach of this train, and that he was also negligent in that after he got from the hand car, and out of danger, he attempted to remove the hand car, and was killed while doing so. Plaintiff's contention is that the deceased was thrown forward from the hand car, by its being suddenly checked; that the hand car moved upon him, and that, while in that position, he was run over and killed. The only witnesses to the accident were the two surviving section men and a Mr. and Mrs. Turner, who testified on behalf of the plaintiff, and the fireman and engineer, called on behalf of the defendant. Mr. and Mrs. Turner were at the time some forty or fifty rods distant, on a load of hay, watching the occurrence. Neither of the section men states on this examination what the deceased did during the time that they were getting from the car to a place of safety. They say that the first they saw of deceased, after they got off the car and turned round to look, he was under the hand car, and that while in that

position the engine struck the car, and the train ran over and killed deceased. Neither of them attempts to explain how deceased came to be in that position. It is shown by several witnesses called by the defendant that, upon examination before the coroner's court, these witnesses testified, in substance, that deceased got off from the hand car, and was attempting to remove it from the track when it was struck. Mr. and Mrs. Turner do not state with certainty about the men getting off the car. They say two men jumped off on the south side, but that they could not see, for the engine, where the other man jumped. The engineer states: "It appeared to me that two got off on my right-hand side. Were running to the fence, the last I noticed of them. The other man tried to get the car off the track. He had hold of the corner of the handle of the car, and he seemed to stumble, and the car was on him, and knocked him down on the track. I knew then that I would kill him, for I could not stop the train. There was nothing to prevent him from getting away. If he had let the hand car alone, he wouldn't got under it." The fireman testified: "The men got off the car. Two of them got off on the right-hand side, and one got off on the left-hand side, to the front, and stepped around in front of the car. I don't know whether he fell down, or how it was. Anyway, he went under the hand car. He seemed to take hold of the front of the car. It was all done so quick that I couldn't tell whether he lifted on the car, or not. He went down, and went under the car, after he stepped to the front end of the car. The engine then struck the hand car, and I could see his head lying on the left rail. It would be impossible for me to see whether that hand car had entirely stopped at the time he went to the front end of it. After he went under the hand car, it was impossible to stop the train. There

was nothing, so far as I could see, to prevent him from walking away from the hand car. If he had stepped away, instead of stepping in front of the hand car, he could have gotten away all right." Plaintiff's contention is based upon the statement of Gowrie that he checked the hand car so suddenly that he was thrown from it. It is argued that, by the same cause, deceased was thrown forward, onto the track; that the hand car moved upon him; therefore, he could not have attempted to remove the hand car, as claimed by defendant. Even if deceased was thus thrown from the hand car, it does not follow that he may not have attempted to remove the car, as stated by the engineer and fireman. We think the evidence establishes, without conflict, such negligence upon the part of the deceased, in not watching for and discovering the approach of the train sooner than he did, and in attempting to remove the hand car, as should defeat a recovery.

II. We will not set out, or discuss in detail, the evidence relied upon to show negligence on the part of the defendant's engineer. We think it shows without conflict, that the engineer gave all the signals that diligence required, and that, as soon as he had reason to believe that the signals had not been heard by the men on the car, he used every appliance and effort at his command to stop the train and avoid an accident. He seems to have appreciated the fact that the direction of the strong wind then blowing might prevent his signals from being heard, while the men on the hand-car seem to have ignored this, as a reason why they should be more watchful for extra trains that might come from that direction. Our conclusion is that under the rule announced in the case of *Meyer v. Houck*, 85 Iowa, 322 (52 N. W. Rep. 235), there was no error in directing a verdict for the defendant.— AFFIRMED.

SUPPLEMENTAL OPINION.

MAY 26, 1896.

GIVEN, J.—I.   At the close of the evidence, the court below sustained defendant's motion for a verdict, and plaintiff appealed.   On the former submission, the action of the district court was affirmed.   A rehearing was asked upon the ground that under the rule announced in *Meyer v. Houck*, 85 Iowa, 319 (52 N. W. Rep. 235), the questions of negligence should have been submitted to the jury, and especially the question of defendant's negligence after the peril of deceased was known.   It is contended that it is the province of the jury alone to pass upon the credibility of the witnesses, and the preponderance and weight of the evidence; and that, where there is any conflict in the evidence, the court may not sustain a motion for a verdict.   In *Meyer v. Houck*, this court announced the rule as follows: "Our conclusion is that, when a motion is made to direct a verdict, the trial judge should sustain the motion, when considering all of the evidence, it clearly appears to him that it would be his duty to set aside a verdict if found in favor of the party upon whom the burden of proof rests."   In this case there is no real or substantial conflict in the evidence as to the material facts.   All agree that the whistle was sounded; but Mr. and Mrs. Turner, who were forty or fifty rods away, say they did not hear all the signals which the engineer and fireman say were given,—a fact that may be accounted for by the prevailing wind.   Surely, there is no contradiction in this evidence.   The engineer and fireman place the speed at eighteen to twenty miles per hour, while Mr. Turner gives it as his opinion that it was twenty to

thirty miles per hour. There was no material conflict in these expressions of opinion. Of the four men present, and who alone could know the fact, three testified that the deceased attempted to remove the hand car from the track, while the other shows that he was in such a dazed condition as not to have observed this fact. We think there can be no dispute as to the controlling facts of the case, and that, therefore, even under appellant's contention as to the rule, the court was warranted in sustaining the motion for verdict, if it clearly appears that the evidence would not sustain a verdict in favor of the plaintiff. After a careful review of the case, we adhere to the opinion that the evidence fails to show negligence upon the part of the defendant's employes prior to the time that they had reason to believe the deceased was in peril, and does show negligence upon the part of the deceased.

Among the many charges of negligence, appellant alleged that the defendant's employes were negligent "in failing to stop said train when they saw that deceased was in such a dangerous position." It was especially urged that a rehearing should be granted, to the end that this charge might be further investigated. As the negligence, if any, in this respect, must be chargeable to the engineer, our inquiry is mainly as to his conduct. He must be held to have known all the facts touching his control over the movement of that train, and the presumption as to the conduct of the deceased, upon which he had a right to act. It was the duty of the deceased to watch for trains, and from where he was, this train could have been seen in ample time to have permitted the deceased and his men to clear the track. While, because of the velocity and direction of the wind, the engineer might not assume that the signals given were heard, he had a right to proceed upon the

assumption that deceased had performed his duty in watching for trains, and, therefore, knew of the approach of this one. He was under no obligation to either check or stop his train until it was reasonably apparent to him that, from any cause, the deceased and his men were not likely to clear the track in time for the passage of the train. Knowing, as he did, that these men were on the track, as they were, it was his duty to observe them closely, and, the moment he had reason to believe that they were not going to leave the track in time to avoid danger, to then promptly use the appliances at his command to check or stop the train, so as to avoid injury to the men. Calculations of time and distances are made in argument, to show that the engineer should have stopped the train before it reached the point of the accident, but this reasoning leaves out of consideration the right that the engineer had, to believe, until the contrary appeared, that the approach of the train was known by the men, and that the track would be cleared in time for its passage. It proceeds upon the theory, that it was the duty of the engineer to check or stop his train as soon as he saw the men on the track, but such is not the rule of care required. He was not required to check or stop the train until it was reasonably apparent that, from any cause, the men were not likely to clear the track in time to allow the train to pass at unchecked speed; and it was not until that moment that the duty devolved upon the engineer of using the appliances at his command to avoid the accident. The evidence shows, without conflict, that from the moment the engineer thought the men were not aware of the approach of the train, and were not likely to leave the track in time to allow the train to pass at unchecked speed, he promptly used every appliance at his command to stop the train.

It is insisted that, as the train was not stopped in time to avoid the accident, the engineer was negligent in not sooner concluding that the men were in peril. It is clear that, if the men had known of the approach of the train at the time the engineer used the appliances to stop it, they could have removed the hand car, and cleared the track for the passage of the train. Therefore, we think it cannot be said that the engineer was negligent in not sooner concluding that the men were in danger unless the speed of the train was checked. If it be true that the engineer was negligent in not sooner concluding that the men were in danger, yet that negligence was not the proximate cause of the injury. As already stated, of the four persons who alone could know the fact, three testified that the deceased tried to get the hand car off the track, while the other did not observe that fact. There is no dispute, therefore, in the evidence, but that the deceased was trying to move the hand car from the track at or immediately before it was struck, and that, had he not done so, he could have gotten out of danger, as the two other men did. Much as men are to be commended for efforts to save life and property, it seem to us that, under the circumstances, this act of the deceased was unquestionably negligent, and was the proximate cause of his death. There was but a moment of time between the act of the deceased and the accident; therefore, no opportunity for the engineer to have avoided the accident, after this negligent act of the deceased became known to him. Whatever the negligence of the engineer may have been in not giving signals, or in not sooner checking or stopping the train, it is, we think, entirely clear that the immediate cause of the decedent's death was his own negligence in attempting to remove the hand car, for it is certain that if he had left the track when he first knew of the approach

of the train, as the two other men did, he would have escaped injury. We have given the case the careful examination that its importance demands, and again reach the conclusion that there was no error in directing a verdict for the defendant.—AFFIRMED.

KINNE AND DEEMER, JJ., dissenting.